IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICKIE SMITH,** : | CIVIL NO. 1:CV-05-1003 |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **CENTRAL DAUPHIN SCHOOL** : | |
| **DISTRICT, BARBARA HASSON,** : | |
| **YVONNE HOLLINS, and RICHARD** : | |
| **MAZZATESTA,** : | |
| : | |
| **Defendants** : | |

## <u>M E M O R A N D U M</u>

Before the court is Defendants' motion to dismiss. (Doc. 7.) The parties have briefed the issues, and the matter is ripe for disposition. For the reasons that follow, Defendants' motion will be Granted in part and Denied in part.

**I.**     **<u>Background</u>**

Plaintiff Vickie Smith is a teacher in the Central Dauphin School District ("School District"). (Am. Compl. ¶ 1.) In 2001, Plaintiff began to experience health problems. (*Id.* ¶ 9.) During the course of investigating the cause of her health problems, Plaintiff became aware that mold in the School District's buildings was having an adverse effect on air quality in these buildings. (*Id.* ¶¶ 10, 12.) Plaintiff asserts that the School District was aware of these problems and had not disclosed this information to the public, the teachers, the staff, or the students. (*Id.* ¶ 13.) Plaintiff notified state agencies of the problem, and disclosed this information to persons affected by the school buildings. (*Id.* ¶¶ 14, 20.)

Plaintiff alleges that as a result of her speaking out to "state agencies and others," Defendants refused to hire her as an assistant coach on two occasions, once in June or July of 2003, and again in June or July of 2004. (*Id.* ¶¶ 14-15.) This position would have afforded her additional compensation. (*Id.* ¶ 16.) Plaintiff had previously held this assistant coaching position before she had complained about the mold in the school buildings. (*Id.* ¶ 18.) Furthermore, Plaintiff contends that the head coach of that sport had requested Plaintiff for the assistant coaching position before it was denied her. (*Id*.) Plaintiff also asserts that Defendants took other personnel actions against her. Specifically, Plaintiff alleges that Defendant Hasson directed the human resources personnel to place Plaintiff on medical leave without her permission. (*Id.* ¶ 26.)

On May 17, 2005, Plaintiff filed her initial Complaint against Defendant School District and Defendants Hasson, Hollins and Mazzatesta ("The Individual Defendants") pursuant to 42 U.S.C. § 1983, alleging that Defendants retaliated against her for speaking out on matters of public concern. Plaintiff filed an Amended Complaint on May 24, 2005 to correct minor technical errors. Defendant Barbara Hasson was the superintendent of the School District during the times Plaintiff was subjected to the retaliatory actions. (*Id.* ¶ 23.) Plaintiff contends that Hasson participated in and ratified the retaliatory actions against her. (*Id*.) Defendant Yvonne Hollins was a director of secondary instruction and an assistant superintendent of the School District. (*Id.* ¶ 24.) Plaintiff asserts that Hollins carried out the retaliatory actions. (*Id.*) Defendant Richard Mazzatesta was an employee of the School District, and is alleged to have ratified the refusal to hire Plaintiff as an assistant coach. (*Id.* ¶ 25.) Plaintiff also filed a pendant state law claim pursuant to

the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951.  Plaintiff seeks damages for emotional distress, attorney's fees, special damages, and punitive damages.  (Am. Compl. ¶ 9.)  Defendants filed the instant motion to dismiss on July 15, 2005, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**II.        Legal Standard: Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint.  *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003).  "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant[s] on notice of the essential elements of the plaintiff's cause of action."  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  The court will not dismiss a complaint for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Port Auth. of New York & New Jersey v. Arcadian Corp.*, 189 F.3d 305, 311 (3d Cir. 1999).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  Additionally, the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]."  *Id.*  Moreover, "documents whose contents are alleged in the complaint and whose

3

authenticity no party questions, but which are not physically attached to the pleading may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a complaint that is merely deficient. *See, e.g., Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 336 F.3d 229, 236 (3d Cir. 2004).

### III.     Discussion

Defendants' motion to dismiss raises several arguments. First, Defendants argue that Plaintiff cannot show a deprivation of her constitutional rights, as she had no property interest in the assistant coaching position. Second, Defendants argue that Plaintiff's allegation of retaliation is insufficient as a matter of law. Specifically, Defendants contend that Plaintiff has not engaged in a protected activity, has not suffered an adverse employment action, and has not alleged that Defendants' actions were motivated by Plaintiff's alleged protected activity. Third, Defendant School District argues that Plaintiff's claim for punitive damages against it should be dismissed based on municipal immunity. Fourth, the Individual Defendants argue that the punitive damages claim against them should be dismissed because they were not sued in their individual capacity, and because Plaintiff failed to

plead the correct motive required for a claim for punitive damages to be maintained under § 1983.  Fifth, the Individual Defendants argue that the § 1983 claims should be dismissed against them because they are entitled to the defense of qualified immunity. Finally, Defendants argue that Plaintiff's state law claim under the PHRA should be dismissed because Plaintiff failed to exhaust her administrative remedies.  The court will address each of these arguments in turn.

### A. **Legal Sufficiency of the First Amendment Retaliation Claim**
### 1. **Deprivation of a Constitutional Right**

Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983.  To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law.  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

Defendants' first argument is that Plaintiff cannot show that she was deprived of a constitutional right because she does not have a property interest in the assistant coaching position.  (Defs.' Br. in Supp. 6-8.)  Thus, according to Defendants, they did not violate her rights by refusing to appoint her to the position

after she made her statements about the safety conditions in the School District's buildings. (*Id.* at 6-8.) Defendants' argument misconstrues the nature of Plaintiff's §1983 claim.

Plaintiff's claim is that Defendants retaliated against her for speaking out on matters of public concern, and this retaliation violated her constitutional rights. (Am. Compl. ¶¶ 1, 15.) The alleged violation of her rights is not the deprivation of the assistant coach position, as Defendants contend. Plaintiff's claim is not based upon due process; rather, it is a claim of the deprivation of her First Amendment right of expression that occurred when Defendants allegedly punished Plaintiff for engaging in protected speech. Thus, Defendants' reliance on *Board of Regents v. Roth,* 408 U.S. 564 (1972) and *Carter v. City of Philadelphia,* 989 F.2d 117 (3d Cir. 1993) is unfounded. These cases involved procedural due process claims and not First Amendment retaliation claims. *See Roth,* 408 U.S. at 569-70; *Carter,* 989 F.2d at 120.

To require a plaintiff to show a property interest in one's own employment in order to sustain a First Amendment retaliation claim would eviscerate the protection that the First Amendment affords public employees. Such a rule would prevent at-will public employees from speaking out on matters of public concern, as their lack of property interest in their own positions leaves them open for unfettered retaliation. This may have been the law over a century ago; Justice Oliver Wendell Holmes, sitting on the Supreme Judicial Court of Massachusetts, observed that "[a] policeman may have a right to talk politics, but he has no constitutional right to be a policeman." *See Connick v. Myers,* 461 U.S. at 143-146 (quoting *McAuliffe v. Mayor of New Bedford,* 155 Mass. 216, 27 N.E. 517 (1892)). Now, however,

courts recognize that the First Amendment protects speech by public employees on public issues; notably, the Supreme Court has said public speech " 'occupies the highest rung on the hierarchy of First Amendment values.' " *Connick*, 461 U.S. at 145 (quoting *Carey v. Brown*, 447 U.S. 455, 467 (1980)).  Thus, there is no need to establish a property interest in one's own job in order to receive First Amendment protection for speech on issues of public concern.  *See Perry v. Sindermann,* 408 U.S. 593, 597-98 (1972) (holding that a lack of contractual or tenure right to re-employment is immaterial to First Amendment retaliation claim).  Accordingly, the court will deny Defendants' motion with respect to this issue.

## 2. **First Amendment Retaliation**

Finding that Plaintiff need not establish a property interest to be eligible for First Amendment protection, the court moves to Defendants' argument that Plaintiff's allegation of retaliation is insufficient as a matter of law.  "Public employees have a First Amendment right to speak freely on matters of public concern." *Curinga v. City of Clairton*, 357 F.3d 305, 309 (3d Cir. 2004); *See also Watters v. City of Philadelphia*, 55 F.3d 886, 891 (3d Cir. 1995) ("[J]udicial vigilance is required to ensure that public employers do not use their authority to silence discourse on matters of public authority.").  Analysis of a First Amendment retaliation claim is a three-part inquiry. *Watters,* 55 F.3d at 891.  First, the speech must be on a matter of public concern. *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001).  Second, the plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Id*.  Finally, if the employee satisfies the first two conditions, the employer may rebut by establishing that it would have taken the adverse employment action regardless of whether the

employee had engaged in the protected speech. *Id*. The first element is a question of law, while the latter two are questions of fact. *Curinga*, 357 F.3d at 310.

Furthermore, in order for retaliatory conduct to be actionable under § 1983, the conduct must be sufficient " 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Only adverse employment actions will give rise to a First Amendment retaliation claim. *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 801 (3d Cir. 2000).

Defendants contend that Plaintiff failed to allege that she engaged in a protected activity. (Defs.' Br. in Supp. 10.) In addition, Defendants assert that Plaintiff did not suffer an adverse employment action when Defendants refused to hire her as an assistant coach. (*Id.* at 15.) Furthermore, Defendants argue that Plaintiff failed to allege that her protected activity caused Defendants to refuse to appoint her to the assistant coaching position. (*Id.* at 12.) For these reasons, Defendants argue that Plaintiff's claim of First Amendment retaliation is insufficient as a matter of law. (*Id.* at 8.) The court will discuss each of these arguments in turn.

### a. **Engaging in a Protected Activity**

For an employee's speech to deserve protection from retaliation, the speech must be on a matter of public concern, and "the employee's interest in expression on this matter must not be outweighed by the interest of the . . . employer in promoting the efficiency of the public services it performs through its employees." *Watters*, 55 F.3d at 892 (citing *Waters v. Churchill*, 511 U.S. 661 (1994)). Speech that addresses issues of political, social or community concerns will be considered a matter of public concern. *Connick*, 461 U.S. at 146. Also relevant to the determination of public concern is the content, context, and form of the statements,

8

"as determined by the whole record." *Id.* at 147-48.  To establish context, the court must determine whether the protected speech is not "confined merely to the public office where the speaker is employed." *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993) (citing *Connick*, 461 U.S. at 148-49).

Defendants assert that Plaintiff's Amended Complaint does not establish the context or form of her protected statements.  (Defs.' Br. in Supp. 11.)  Specifically, Plaintiff's Amended Complaint failed to allege the date, time, and place of these protected activities.  (*Id.*)  Thus, Defendants argue that Plaintiff's claim is insufficient as a matter of law.  (*Id.*)  The court disagrees.

First, Plaintiff asserts that her speech involved allegations of health and safety problems with Defendant School District's buildings.  This is a topic of great concern to the community, especially to those families whose children attend the schools in the district.  Second, Plaintiff contends that she contacted "state agencies and others" and spoke to "the public in general, to other teachers," and "to staff and students."  (*Id.* ¶¶ 14, 20.)  Although Plaintiff does not state the exact date and time of the protected speech, the court believes this is unnecessary at this stage of the proceeding.  Because Plaintiff contends that the retaliation occurred as a result of her speech, one can infer that the speech occurred before the retaliation.  The place of the speech is relevant only where the speech may be confined to the office where the speaker was employed.  By contacting state agencies and the general public, Plaintiff directed her speech to individuals outside the public office in which she was employed.  Therefore, the court believes that Plaintiff has plead adequately that she engaged in a protected speech activity, and that she directed her activity to individuals beyond her place of employment.  Accordingly, the court will deny Defendants' motion with respect to this issue.

### b.     **Adverse Employment Action**

To establish a First Amendment retaliation claim, the plaintiff must also assert that an adverse employment action was taken against her.  *See Merkle,* 211 F.3d at 801.  Courts have found that retaliatory conduct constitutes an adverse employment action when the employer makes decisions related to hiring, rehiring, promotion, transfer, or recall.  *Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir. 2003).  "On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands."  *Id.* (internal quotation omitted).

Here, Defendants contend that their refusal to hire Plaintiff as an assistant coach does not constitute an adverse employment action.  They argue that failure to hire her as an assistant coach did not affect her position as a teacher, as the action neither affected her eligibility for salary increases nor changed her responsibilities as a teacher.  (Defs.' Br. in Supp. 16.)

Plaintiff may not have suffered an adverse employment action with regard to her teaching position.[1]  However, whether Plaintiff suffered an adverse employment action with respect to her teaching position is not relevant to the question of whether Plaintiff suffered such adverse action with respect to the

---

[1] Plaintiff does allege that Defendant Hasson directed the human resources department of the school district to force Plaintiff to go on medical leave.  (Am. Compl. ¶ 26.)  Defendants seem to argue that this action suggests a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101.  (Defs.' Br. in Supp. 8 n.1.)  However, Plaintiff further alleges that this action was "not advantageous to her," though Plaintiff does not elaborate as to how this action put her at a disadvantage.  (*Id.*)  This action may rise to an adverse employment action with regard to her teaching position upon a showing that this action "alter[ed] [the] employee's compensation, terms, conditions or privileges of employment."  *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (citing *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 273 (7th Cir. 1996)).  Defendants have not asserted that this action was not an adverse employment action, and so the court will not determine the merits of this issue at this time.

assistant coaching position. Defendants are also employers with respect to that position. The position is compensated, and Plaintiff had held that position in the past. Plaintiff alleges that Defendants either participated in or ratified the refusal to hire Plaintiff to the assistant coaching position. A refusal to hire or rehire is considered an adverse employment action sufficient to sustain a claim of retaliation. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1998). Thus, Plaintiff has alleged an adverse employment action sufficient to withstand dismissal and the court will deny Defendants' motion with respect to this issue.

### c.     Causation

Plaintiff must also allege that her protected speech was a "substantial or motivating factor" in the employer's decision to engage in the alleged retaliatory action. *Suppan*, 203 F.3d at 235. Defendants argue that Plaintiff did not allege that her speech activity was a substantial or motivating factor. (Defs.' Br. in Supp. 12.) The court disagrees. Plaintiff states that "[b]ecause the plaintiff contacted state agencies, and others, about her belief that certain school buildings were unsafe and unhealthy, the plaintiff suffered retaliation at the defendant's hands in a number of egregious ways." (Am. Compl. ¶ 14.) "It is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability." *Suppan*, 203 F.3d at 233. At this point, because causation is a question of fact, the court cannot determine whether Plaintiff can show causation. However, Plaintiff has adequately pled causation, and as such the court will not dismiss her claim on this issue.

### B.     Punitive Damages

With respect to Plaintiff's claim for punitive damages, Defendants make two arguments. (Defs.' Br. in Supp. 17.)  First, Defendants assert that Plaintiff cannot recover against Defendant School District because municipal defendants are immune from such damages under § 1983. (*Id.*)  Plaintiff concedes this point. (Pl.'s Br. in Opp'n 6.)  Thus, the court will grant Defendants' motion to dismiss on this issue.  Second, Defendants contend that Plaintiff cannot recover punitive damages against the Individual Defendants because Plaintiff sued them in their official capacities. (*Id.* at 18.)  Defendants argue that the claims against the Individual Defendants are based on their capacities as officials in the school district, and as a result these claims "constitute claims against these individuals in their official capacities." (*Id.*)  Plaintiff responds that this is neither a correct nor a "common sense interpretation of the complaint." (Pl.'s Br. in Opp'n 6.)

A complaint need not state explicitly whether defendants are sued in their individual or personal capacity. *See Gregory v. Chehi*, 843 F.2d 111, 119 (3d Cir. 1988) (stating that court must "interpret the pleading" to ascertain intent).  Where a complaint is unclear as to whether defendants are sued in their official or individual capacities, the court looks to both the complaint and the "course of the proceedings" to determine the liability the plaintiff seeks to impose. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). That a defendant's activities were done while performing his job is not dispositive; rather, this fact supports only the position that a defendant was acting under color of state law. *Id.* at 636.  Before finding that a defendant is sued in his individual capacity, the court considers whether the pleadings offer the defendant adequate notice that his personal assets are at stake in the proceeding. *Id.* at 636 n.7.

Here, the Amended Complaint, while not specifically indicating whether it seeks to sue the Individual Defendants in their individual capacity, nonetheless indicates that intention. First, the Amended Complaint sued the School District and Defendants Hasson, Hollins, and Mazzatesta for joint and several liability. (Am. Compl. ¶ 9.) Had Plaintiff intended to sue defendants in their official capacities, seeking joint and several liablity would make little sense, as the suit would be equivalent to a suit directly against the school district. *See Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996). Furthermore, Defendants seek to assert a qualified immunity defense. (Defs.' Br. in Supp. 20.) A qualified immunity defense may only be maintained by defendants sued in their individual capacity. *See Melo,* 912 F.2d at 636*; Atchinson*, 73 F.3d at 425. This indicates that Defendants were aware of Plaintiff's intention to sue them in their individual capacities. For this reason, the court believes the Individual Defendants had adequate notice that they were being sued in their individual capacity.

As a second argument in support of dismissing Plaintiff's punitive damages claim, the Individual Defendants assert that punitive damages against them are improper because Plaintiff failed to allege that their actions were motivated by an evil intent. (Br. in Supp. 19.) Punitive damages may be awarded in a § 1983 action only where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983).

Plaintiff contends that "the defendants were unlawfully motivated by a desire to prevent the public from learning how they had unlawfully kept information from students and parents, while they demonstrated a blatant disregard for the rights

and health of Vicki Smith . . . ." (Am. Compl. ¶ 19.)  This statement, while not specifically using the words "evil intent" or "reckless or callous indifference," *Smith,* 461 U.S. at 56, nonetheless assert that Defendants intentionally disregarded Vicki Smith's federally protected rights.  This is sufficient to survive Defendants' motion to dismiss.  Because Plaintiff has sued the Individual Defendants in their individual capacity, and because Plaintiff has properly pled that Defendants acted with the requisite motivation, the court will not dismiss Plaintiff's claim for punitive damages against the Individual Defendants.

### C.     **Qualified Immunity for the Individual Defendants**

Defendants assert that the claims against the Individual Defendants should be dismissed based on their qualified immunity.  (Defs.' Br. in Supp. 20.) Government officials enjoy qualified immunity "insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In deciding whether a defendant may successfully assert qualified immunity, the court must determine whether reasonable officials could believe that their conduct was not unlawful even if it was in fact unlawful. *Larsen v. Senate of the Commonwealth of Pennsylvania*, 154 F.3d 82, 94 (3d Cir. 1998) (citing *In re City of Philadelphia Litig.*, 49 F.3d 945 (3d Cir. 1995)).  In the context of a First Amendment retaliation claim, the court inquires "whether [the] officials reasonably could believe that their motivations were proper even when their motivations were in fact retaliatory." *Id.* Such a determination requires a factual determination of the official's subjective beliefs and motivations. *Id.*  Thus, whether qualified immunity defeats a First Amendment retaliation claim usually cannot be determined on the face of the

pleadings, unless the "legitimate basis for the actions [is] so apparent that the plaintiff's allegations of retaliatory motive could not alter the conclusion that . . . the defendants would have been compelled to reach the same decision even without regard for the protected First Amendment activity." *Id.* at 95.

The Individual Defendants assert that the Plaintiff's claims against them fail as a matter of law because these Defendants enjoy qualified immunity.  First, they argue that because Plaintiff has no property right in the coaching position, Plaintiff cannot show that she was deprived of a clearly established constitutional right.  (Defs.' Br. in Supp. 21.)  Second, Defendants contend that even if Plaintiff could show that she was deprived of a constitutional right, Plaintiff has not alleged that the Individual Defendants understood that Plaintiff's rights were being violated in denying her the coaching position.  (*Id*.)

Again, the Individual Defendants misconstrue the nature of a First Amendment retaliation claim.  As discussed above, Plaintiff need not show a property right in the coaching position. *See infra* at 6-7.  As to Defendants' second argument, Plaintiff alleges that the Individual Defendants retaliated against her for speaking out on a matter of public concern.  (Am. Compl. ¶ 27.)  She further alleges that Defendants had no other reason to take their actions other than retaliation.  (*Id.* ¶ 15.)  For the purposes of this motion, the court must accept these allegations as true.  These allegations, if true, may only be rebutted by a showing that Defendants would have taken this action even in the absence of the protected speech. *See Mt. Healthy*, 429 U.S. at 287.  This cannot be determined at this stage of the litigation.  Thus, the court will deny the Individual Defendants' motion to dismiss on the basis of qualified immunity.

15

### D.     **Plaintiff's Pennsylvania Human Relations Act Claim**

Defendants allege that Plaintiff's claim under the PHRA should be dismissed for failure to exhaust administrative remedies.  The PHRA bars employers from discriminating against employees based on "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability . . . ."  43 P.S. 955(a).  Such discrimination can include termination or a refusal to hire.  *Id.*  However, in order to pursue a claim in court, the employee must exhaust the administrative remedies required by the PHRA.  *See Burgh v. Borough Council of Borough of Montrose,* 251 F.3d 465, 475-76 (3d Cir. 2001) (noting that a plaintiff may proceed to court one full year after filing a charge before the Pennsylvania Human Relations Commission ("PHRC")); *Campanaro v. Penn. Elec. Co.,* 626 A.2d 491, 492 n.1 (Pa. Super. 1995).  To initiate a claim under the PHRA, a plaintiff must file an administrative complaint with the PHRC within 180 days of the alleged act of discrimination.  43 P.S. §§ 959, 962.

There is no allegation in Plaintiff's Amended Complaint that Plaintiff has filed an administrative complaint with the PHRC, or in any way exhausted her administrative remedies.  Instead, Plaintiff merely alleges that Defendants' actions violated her rights under the PHRA.  (Am. Compl. ¶ 29.)  Plaintiff does not dispute Defendants' allegation that Plaintiff has not exhausted her administrative remedies.[2]  Therefore, the court will dismiss Plaintiff's PHRA claim.  Because Plaintiff has failed to exhaust her administrative remedies under the PHRA, it would be futile to provide Plaintiff leave to amend her Amended Complaint with respect to this issue.

---

[2] Plaintiff's Brief in Opposition lists the PHRA issue in her "Issues" section, even though she calls it a "PHRC claim."  (Pl.'s Br. in Opp'n 2.)  However, the brief does not discuss this issue further, and it does not indicate anything that would suggest that she had exhausted her administrative remedies.

**IV.     Conclusion**

For the reasons set forth above, the court will deny Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim. Furthermore, the court will deny Defendants' motion to dismiss Plaintiff's claim for punitive damages against the Individual Defendants. However, the court will dismiss the punitive damages claim against Defendant School District. In addition, the court will grant Defendants' motion to dismiss Plaintiff's PHRA claim. An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: September 23, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICKIE SMITH,** : | **CIVIL NO. 1:CV-05-1003** |
| **Plaintiff** : | |
| v. : | |
| **CENTRAL DAUPHIN SCHOOL DISTRICT, BARBARA HASSON, YVONNE HOLLINS and RICHARD MAZZATESTA,** : | |
| **Defendants** : | |

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Defendants' motion to dismiss Plaintiff's § 1983 claim is **DENIED**.

2) Defendants' motion to dismiss Plaintiff's claim for punitive damages against Defendant Central Dauphin School District is **GRANTED**.

3) Defendants' motion to dismiss Plaintiff's claim for punitive damages against the remaining defendants is **DENIED**.

4) Defendants' motion to dismiss Plaintiff's state law claim pursuant to the Pennsylvania Human Relations Act is **GRANTED** without leave to amend.

                                                s/Sylvia H. Rambo
                                                SYLVIA H. RAMBO
                                                United States District Judge

Dated: September 23, 2005.