IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICKIE SMITH,** | : | **Civil No. 1:05-CV-01003** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **CENTRAL DAUPHIN SCHOOL DISTRICT, BARBARA HASSON, YVONNE HOLLINS, and RICHARD MAZZATESTA,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

Before the court is supplemental briefing from the parties on the issue of *Monell* liability for Defendant Central Dauphin School District ("School District"). The court ordered briefing on the issue after granting in part and denying in part Defendants' motion for summary judgment. (Doc. 74.) The court presumes familiarity with that decision and will not repeat its contents. The question presented concerns the scope of the School District's potential liability for the adverse employment actions identified therein. The court concludes that the School District may be liable only for the actions of placing Plaintiff on medical leave and failing to hire her as an assistant coach in August 2003.

I.        **Background**

Plaintiff's amended complaint alleges that the School District "retaliat[ed] against the plaintiff[,] engag[ed] in a policy and practice of misleading the plaintiff and others about matters of public concern . . . [and] unlawfully depriv[ed] her of income and opportunity and of the chance to work in a healthy environment as a way of driving her from her employment . . . ." (Doc. 2 ¶ 22.)

After extended discovery, Defendants moved for summary judgment on March 16, 2007.  (Doc. 60.)  This court concluded that the alleged adverse employment actions that could constitute retaliation are 1) placing Plaintiff on medical leave; 2) opting not to hire Plaintiff as an assistant coach; 3) withholding information about the environmental condition at Linglestown Junior High School ("LJHS"); and 4) assigning Plaintiff to teach unfamiliar classes and requiring her to be a floater at Central Dauphin High School ("CDHS").  (Doc. 74 at 32-33.)  The record on summary judgment shows that the Central Dauphin School Board ("School Board") made the final decision to place Plaintiff on medical leave (*id.* at 12) and not to hire her as an assistant cross-country coach in August 2003 (*id.* at 17-18).  No evidence has been adduced that the School Board participated in the alleged withholding of environmental information about LJHS by Superintendent Hasson or the decisions about her classroom and teaching assignments by Principal Mazzatesta.

The court did not previously evaluate the scope of the potential liability of Defendant Central Dauphin School District because the parties did not brief the issue.  (*Id.* at 22 n.6.)  Thus, the court ordered supplemental briefing on the issue of who or what entity was a policymaker for Defendant Central Dauphin School District for purposes of § 1983 liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (Doc. 86 at 1.)  Upon consideration of the parties' briefs, the issue is now ripe for disposition.

**II.**        **Legal Standard – Summary Judgment**

_____Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.*  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232.

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of

the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.**     **Discussion**

Under *Monell* and its progeny, it is well-settled that a municipality is a "person" for purposes of 42 U.S.C. § 1983.  Liability will attach to the municipality only when the municipality[1] itself has caused a constitutional violation.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  A municipality may act only through natural persons, however.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).  Hence, the first task in the *Monell* analysis, and a matter of law for the court, is to identify the natural person or entity comprised of natural persons authorized to act on behalf of the municipality such that the person's or entity's action may be imputed to the municipality itself.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  There are four adverse employment actions alleged to have violated Plaintiff's rights here.  The court will review each to determine who or what entity acted and whether the School District may subsequently be held liable.

**A.**     **Medical Leave and Coaching**

A municipality's properly-constituted legislative body is authorized to act for the municipality.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A single decision by such a body may subject the municipality to § 1983 liability. *Id.*; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 252 (1981); *Owen v. City of Independence*, 445 U.S. 622, 627-29 (1980).  The School Board is the legislative

---

[1] A school district is a municipality for purposes of *Monell* liability.  24 Pa. Cons. Stat. Ann.§ 2-211; *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 144 n.1 (3d Cir. 2002).

body for the School District, *see* 24 Pa. Cons. Stat. Ann. §§ 2-211, 5-508; thus, "proof that [it] . . . has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 405 (1997).  The record demonstrates that the School Board made the final decision as to Plaintiff's placement on medical leave and whether she would be hired as an assistant cross-country coach.  Thus, if the jury determines that the School Board made these decisions in retaliation for Plaintiff's protected speech, the School District will be liable under § 1983. Plaintiff must show that a majority of the voting members of the School Board harbored retaliatory intent in making each decision for such intent to be ascribed to the School District.  *See San Filippo v. Bongiovanni*, 30 F.3d 424, 445-46 (3d Cir. 1994); *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 840-42 (E.D. Pa. 1998).

### B.   Information About LJHS and Teaching Assignments

The court now turns to whether the School District may be held liable for the action of Superintendent Hasson, for withholding of information about mold conditions at LJHS, and actions of Principal Mazzatesta, for assigning Plaintiff to unfamiliar courses in an unfavorable classroom setting.  *Respondeat superior* is not a viable theory of municipal liability under § 1983; rather, a plaintiff must plead and prove that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury." *Brown,* 520 U.S. at 405; *accord Jett*, 491 U.S. at 737.  To do so, a plaintiff must show that a municipal custom or policy was the proximate cause of the constitutional injury sustained.  *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

5

A municipal custom exists when "practices of state officials [are] so permanent and well settled as to virtually constitute law." *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996). Plaintiff alleges that the School District had a custom of misleading her[2] about the conditions of the buildings in which she taught. Defendants argue that Plaintiff did not produce evidence sufficient for a reasonable jury to conclude that the School District had such a custom. The court agrees. Plaintiff has failed to raise a genuine issue of material fact on this issue because there is no properly-admissible evidence on record that such a practice existed, much less that it was so permanent and well-settled as to virtually constitute law. *See Groman v. Twp. of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995); *Izquierdo v. Sills,* 68 F. Supp. 2d 392, 406 (D. Del. 1999). Plaintiff's conclusory arguments to the contrary are without merit.

Thus, the School District will be liable only if Plaintiff has established that a municipal policy inflicted her constitutional injury. *See Andrews*, 895 F.2d at 1480. Municipal policies such as an official proclamation, edict, or act, are set by officials with "final policy-making authority" vested by state law and local ordinance. *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997); *Pembaur*, 475 U.S. at 481. An official granted final policymaking authority is "responsible for making policy *in the particular area* of municipal business in question" and has "authority to make policy in that area [that is] *final and unreviewable*." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006). In the ordinary course, the court may not "assume[ ] that municipal policymaking authority lies somewhere

---

[2]   Plaintiff's claim that the School District mislead *the public* about the air quality in its schools is not apposite to her claims here. Even if it were pertinent, Plaintiff has not shown a genuine issue of material fact as to whether the School District misled the public.

6

other than where the applicable law purports to put it"; but because statutes and codes are not always clear on the issue, the court may also look to the practical aspects of an official's job. *Praprotnik*, 485 U.S. at 126.  If an employee's action is subject to discretionary review, the employee is not a final policymaker.[3]  *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003).  "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *Praprotnik*, 485 U.S. at 123.

The Supreme Court has noted the distinction between mere decisionmaking authority and final policymaking authority sufficient to bind a municipality to liability under § 1983. *Praprotnik*, 485 U.S. at 129-130; *Pembaur*, 475 U.S. at 481-83.  "The fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-82.  The Court noted the following distinction in the employment context:

> If city employment policy was set by the Mayor and Aldermen and by the Civil Service Commission, only those bodies' decisions would provide a basis for city liability.  This would be true even if the Mayor and Aldermen and the Commission left the appointing authorities discretion to hire and fire employees and [the appointing authorities] exercised that discretion in an unconstitutional manner.

*Praprotnik*, 485 U.S. at 129-30 (quoting *Pembaur*, 475 U.S. at 483 n.12) (internal alterations omitted).  A municipality does not automatically delegate final

---

[3]  For this reason, the School District will be liable for placing Plaintiff on medical leave and choosing not to hire her as an assistant coach if the *School Board* is found to have taken these actions with retaliatory intent.  That Superintendent Hasson or Assistant Superintendent Hollins may have participated in the events leading up to the decisions (*see* Doc. 74 at 32-33) is of no moment in the instant analysis.  Because any actions by these individual Defendants were subject to review by the School Board, neither Superintendent Hasson nor Assistant Superintendent Hollins were final policymakers on these issues.

policymaking authority to an employee when it delegates the discretion to carry out the duties necessary and proper to perform her job. *Praprotnik*, 485 U.S. at 130; *San Filippo*, 30 F.3d at 445; *Walker-Serrano v. Leonard*, 168 F. Supp. 2d 332, 346 (M.D. Pa. 2001). Moreover, *Praprotnik* expressly rejected the concept of ascribing "*de facto* final policy-making authority" to an official because it resembled too closely *respondeat superior* and was too unpredictable for the sound application of § 1983 principles to municipalities. 485 U.S. at 131; *accord Dolly v. Borough of Yeadon*, 428 F. Supp. 2d 278, 285 (E.D. Pa. 2006).

It follows from *Praprotnik* and *Pembaur* that the actions of an individual official or employee will create liability for a municipality when 1) the individual acted in the exercise of final policymaking authority; 2) a final policymaker delegated to the individual authority to speak or act for the municipality; or 3) a final policymaker ratified the individual's conduct or speech after it occurred. *Hill*, 455 F.3d at 245; *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). Thus, Plaintiff must show direct evidence that the School District acted through a final policymaker to retaliate against her for exercising her First Amendment rights. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 833 (1985) (Brennan, J., concurring). Defendants argue that the final policymaker for the School District is the School Board. *See* 24 Pa. Cons. Stat. Ann. §§ 5-508, 5-514, 10-1081. Plaintiff argues, without legal citation, that Superintendent Hasson and Principal Mazzatesta are final policymakers for the School District for purposes of *Monell* liability.

### 1.   **Superintendent Hasson**

As noted, the court must look to Pennsylvania law to determine whether Superintendent Hasson was responsible specifically for disclosing information about the environmental conditions at District schools and had final and unreviewable authority to take action in that regard.  *See Hill*, 455 F.3d at 245.  The general duties of a Pennsylvania superintendent are:

> to visit personally as often as practicable the several schools under [her] supervision, to note the courses and methods of instruction and branches taught, to give such directions in the art and methods of teaching in each school as [she] deems expedient and necessary, and to report to the board of school directors any insufficiency found, so that each school shall be equal to the grade for which it was established and that there may be, as far as practicable, uniformity in the courses of study in the schools of the several grades, and such other duties as may be required by the board of school directors.  The district superintendent shall have a seat on the board of school directors of the district, and the right to speak on all matters before the board, but not to vote.

24 Pa. Cons. Stat. Ann. § 10-1081.  Superintendents have additional, specific areas in which they are granted final policymaking authority by statute.  *See, e.g.,* 24 Pa. Cons. Stat. Ann.§ 11-1123 (employee performance "[r]ating shall be done by or under the supervision of the superintendent of schools"); *McGreevy*, 413 F.3d at 368-69.

Non-binding authority addressing Pennsylvania law reflects a willingness in other courts to deem a superintendent a final policymaker for a school district without citing to a Pennsylvania statute granting her that status in a particular area of instruction or administration.  *See Patrick v. Great Valley Sch. Dist.*, Civil Action No. 04-5934, 2006 WL 1530266, at *6 (E.D. Pa. May 31, 2006) (noting that parties conceded that both superintendent and school board have final policymaking authority); *Jones v. Ind. Area Sch. Dist.*, 397 F. Supp. 2d 628, 657

(W.D. Pa. 2005) (denying summary judgment because superintendent was a "top-level official" whose actions were sufficient to impute § 1983 liability to a school district); *Sciotto v. Marple Newtown Sch. Dist.*, 81 F. Supp. 2d 559, 575 n.17 (E.D. Pa. 1999) (assuming without deciding that "as the chief executive officer of the school district, the superintendent can be considered a policymaker").

Ultimately, Plaintiff bears the burden of proving that Superintendent Hasson was the final policymaker for the School District before liability may attach to her actions regarding health information about LJHS. She has not done so. Section 10-1081 contains no indication that a superintendent is to report to anyone but the school board about the conditions of a school within her purview. Basic principles of statutory construction dictate that if a statute contains an enumerated list, for example, of duties of a superintendent, any duty not included is necessarily *excluded* from a superintendent's responsibilities. Further, Plaintiff has failed to identify a statute like 24 Pa. Cons. Stat. Ann. § 11-1123 with a directive regarding this specific issue, *see McGreevy*, 413 F.3d at 368-69; the court's research has not yielded one.

The court rejects as too facile both the non-binding case law and Plaintiff's unsupported assertion that simply because a superintendent is chief executive of a school district, any and all actions taken by her necessarily must be the actions of the School District. *See Jett*, 491 U.S. at 738 (remanding case to Court of Appeals "to determine whether Superintendent Wright possessed final policymaking authority in the area of employee transfers"). That sweeping proposition is contrary to the paradigm stated in *Monell* and its progeny. *See Praprotnik*, 485 U.S. at 126-27; *Hill*, 455 F.3d at 245. It is akin to finding the

superintendent a *de facto* final policymaker, which is impermissible under *Praprotnik*. 485 U.S. at 131. On the facts at hand, the court finds no basis to conclude that Superintendent Hasson was the final policymaker for the School District regarding provision of information about health conditions at its schools to an employee.

Plaintiff attempts to establish an alternate basis for liability of the School District by making a conclusory statement that the School Board acquiesced to Superintendent Hasson's action, thus rendering it the action of the School District. Plaintiff fails to support her assertion with a legal citation or a citation to record evidence demonstrating acquiescence. *C.f. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs," in the universe of legal precedent, or the record on summary judgment.). Plaintiff has presented no admissible evidence that the School Board was even aware of Plaintiff's request for the information, Superintendent Hasson's response to it, or the time lag between the two, much less aware of the alleged retaliatory intent behind the delay. *See San Filippo*, 30 F.3d at 445. Accordingly, the School District may not be held liable on this theory.

### 2.   Principal Mazzatesta

Plaintiff does not identify Pennsylvania law that grants a high school principal the final policymaking authority to set classroom and teaching assignments; again, the court has been unable to locate such a provision. The record reflects that Principal Mazzatesta had the authority to decide who would teach which subject in which classroom at CDHS. (Mazzatesta Dep. 101:15-102:21, 105:21-107:10, May 17, 2006.) As related *supra*, however, decisionmaking

authority does not equate to final policymaking authority for purposes of *Monell* liability. *Praprotnik*, 485 U.S. at 129-30; *Walker-Serrano*, 168 F. Supp. 2d at 346. Moreover, Plaintiff has failed to show that Principal Mazzatesta's decisions on these topics were final and unreviewable. *See Hill*, 455 F.3d at 245. He was not a final policymaker for the School District on these issues.

Plaintiff argues in the alternative, again without citation to legal authority or to the record, that the School Board was aware of and acquiesced to Principal Mazzatesta's decisions. There is no record evidence that would demonstrate such knowledge and acquiescence by the School Board. *See supra*; *San Filippo*, 30 F.3d at 445; *Dunkel*, 927 F.2d at 956. Thus, the School District may not be held liable for his actions.

## III.        Conclusion

Summary judgment for the School District on the issue of *Monell* liability will be denied in part and granted in part. It will be denied as to liability for the actions taken by the School Board to place Plaintiff on medical leave and not to hire her as an assistant coach in August 2003. It will be granted in all other respects.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 6, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICKIE SMITH,** | : | **Civil No. 1:05-CV-01003** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **CENTRAL DAUPHIN SCHOOL DISTRICT, BARBARA HASSON, YVONNE HOLLINS, and RICHARD MAZZATESTA,** | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**, in light of the Defendants' motion for summary judgment (Doc. 60) and the parties' supplemental briefing on the issue of the *Monell* liability of the School District (Docs. 89, 93, 95):

1) Summary judgment is denied as to Defendant Central Dauphin School District regarding liability for the adverse employment actions of a) placing Plaintiff on medical leave and b) not hiring Plaintiff as an assistant coach for the Central Dauphin High School Cross-Country Team in August 2003.

2) Summary judgment is granted as to Defendant Central Dauphin School District in all other respects.

3) Therefore, the issue for trial is whether Plaintiff's protected speech was a "substantial" or "motivating" factor in the following adverse employment actions taken by the parties named; or whether Defendants would have taken the same actions even in the absence of Plaintiff's protected speech, *see Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977):

a) placing Plaintiff on medical leave, by Defendants Hasson, Hollins, and School District;

b) opting not to hire Plaintiff as an assistant coach, by Defendants Hasson and School District;

c) withholding information about the environmental conditions at Linglestown Junior High School, by Defendant Hasson; and

d) assigning Plaintiff to teach unfamiliar classes and requiring her to be a floater at Central Dauphin High School, by Defendant Mazzatesta.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  August 6, 2007.